# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

No. 15-535V
Filed: January 3, 2017
PUBLISHED

<span style="color:red">REISSUED FOR PUBLICATION
13 FEB 2017
OSM
U.S. COURT OF FEDERAK CLAIMS</span>

\* \* \* \* \* \* \* \* \* \* \* \* \*

VERNON D. BEGLEY,

      Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

      Respondent

\* \* \* \* \* \* \* \* \* \* \* \* \*

Dismissal; Motion to Dismiss; Polio; Post-Polio Syndrome; Vaccine Administered Before the Enactment of the Vaccine Program; Prisoner; Equitable Tolling

**FILED**

JAN - 3 2017

OSM
U.S. COURT OF
FEDERAL CLAIMS

*Vernon D. Begley, Florida City, FL, pro se.*
*Jennifer Reynaud, Esq., U.S. Department of Justice, Washington, DC, for respondent.*

## DISMISSAL DECISION[1]

**Roth,** Special Master:

    This matter is before the undersigned on respondent's Motion to Dismiss, filed August 28, 2016. Vernon Begley ("Mr. Begley" or "petitioner"), an inmate of the Florida Department of Corrections, filed this petition on May 27, 2015, seeking compensation for an alleged vaccine-related onset of poliomyelitis ("polio") under the National Vaccine Injury Compensation Program ("the Program").[2] 42 U.S.C. § 300aa–10-34. Respondent moved to dismiss the petition, arguing

---

[1] Because this published decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), petitioner have 14 days to identify and move to delete medical or other information, that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter

that it is time-barred pursuant to § 16(a)(1). Petitioner argues that dismissal of this petition would be an injustice and, because of his unique and extraordinary circumstances, the statute of limitations should be equitably tolled. Based on the established case law, petitioner's claim is time-barred. Respondent's motion for dismissal is therefore GRANTED.

## I.     Procedural History

On May 27, 2015, Mr. Begley, proceeding *pro se*, filed a petition seeking compensation for injuries suffered as a result of a polio vaccine he received as a child in the late 1950s. Mr. Begley's case was originally assigned to Special Master Dorsey.[3] After a status conference with Mr. Begley and respondent's counsel, Special Master Dorsey issued an Order stating that if Mr. Begley did not obtain the assistance of an attorney by December 5, 2015, his case would proceed as *pro se*. Order, filed 10/9/15, ECF No. 8. On October 13, 2015, Mr. Begley filed a letter he had written stating that he had been recently diagnosed with multiple-sclerosis "brain damage," and vision problems. Letter, filed Oct. 13, 2015, ECF No. 9.

The case was then reassigned to me on October 19, 2015. Notice of Reassignment, ECF No. 11. In order to assist Mr. Begley, I issued an Order on December 18, 2015, requiring him to submit a status report by February 1, 2016 with the names and mailing addresses of any medical providers from which he would like to obtain his medical records. My Order included instructions for issuing subpoenas for medical records. A telephonic status conference was scheduled for Wednesday, April 13, 2016. Order, issued December 18, 2015, ECF No. 16.

On February 17, 2016, Mr. Begley filed a motion requesting that the court appoint an attorney to represent him. He attached a list of facilities he wished to subpoena. ECF No. 13. The handwritten list is difficult to read, but includes facilities that would not appear to have his medical records from the 1950s (such as the Clark County and Indiana State Departments of Health) and organizations entirely unrelated to his claim (such as National Public Radio, the Florida Department of Corrections, and two organizations that Mr. Begley appears to believe might be in possession of scientific papers related to polio).[4] In an effort to be diligent, my Chambers

---

"Vaccine Act" or "the Act"). Hereafter, for ease of reference, individual section references will be to 42 U.S.C. § 300aa of the Act.

[3] Special Master Dorsey was elevated to Chief Special Master on September 1, 2015.

[4] During status conferences, petitioner has referenced other litigation that is currently pending. It appears that several of the institutions included in this list (such as the Florida Department of Corrections) may be involved in other cases that he has filed. It also appears that he might not fully understand what a subpoena is. In an attachment to his motion for the court to appoint counsel on his behalf, petitioner wrote, "I must subpoena the Fla. Department of Corrections to do the spinal tap and send it t (sic) a polio lab to prove "tame polio" vs. wild virus. D.O.C. so far refuses to do any test." Attachment to Motion for Appointment of Counsel, ECF. No. 13 at 2. Petitioner's unfamiliarity with the legal system led to the multiple opportunities I provided him to find counsel familiar with the Program to communicate with petitioner. Ultimately none of

attempted to contact several of the facilities listed to determine how long they keep their records before destroying them. The phone line for one has been disconnected. Another has only been open since 1994, so it would have been impossible for Mr. Begley to have ever been a patient there. In any event, from the investigation it appears that the medical facilities listed would not have retained medical records for so many decades, and that the remainder of the requests were outside the scope of this litigation. On March 15, 2016, I issued an Order explaining that a special master does not have the authority to appoint an attorney for any petitioner, and again provided the list of attorneys admitted to the bar of the United States Court of Federal Claims who might be able to assist him. Order, issued March 15, 2016, ECF No. 15.

A status conference was held on April 13, 2016. Petitioner's unsuccessful attempts to retain counsel were discussed, and petitioner was again encouraged to continue reaching out to attorneys in the Program in an effort to speak with an attorney. Petitioner was again provided with the names and contact information for the vaccine law clinics as well as members of the bar.

Mr. Begley then filed a status report on May 16, 2016, stating that he was unable to obtain counsel, despite contacting the various attorneys suggested by the court.[5] Status Report, filed May 16, 2016, ECF No. 19.

Another status conference was held on August 24, 2016. Petitioner explained that despite efforts he was unable to retain counsel. The deficiencies in his case were discussed. Respondent's counsel was ordered to file a motion to dismiss, which would then enable petitioner to submit all of his arguments in support of his petition in a response to the court. Order, issued August 25, 2016, ECF No. 22.

Respondent filed her Motion to Dismiss ("Motion") on August 29, 2016, arguing that Mr. Begley's petition was not filed within the statutorily prescribed limitations period set forth in § 16(a)(1) and therefore must be dismissed. Mr. Begley filed his response to respondent's Motion on September 15, 2016, arguing that dismissal of his petition would be unjust and that the statutory deadline must be equitably tolled considering his circumstances. Response to Motion ("Response"), filed Sept. 15, 2016, ECF No. 25.

This matter is now ripe for decision.

## II.   Background

Petitioner believes that he received a polio vaccination in 1958, but is not sure of the date. Petitioner, who has been incarcerated for the past 32 years, states that the onset of his polio was

---

the facilities that petitioner listed were determined to be able to provide documents that would support the factual basis for his claim.

[5] Petitioner provided a list of the attorneys he contacted from the bar membership provided to him. However, none of the attorneys contacted would speak with him.

after he received this vaccination.[6]  He then began experiencing symptoms of post-polio syndrome in 1988.[7]  Petitioner's Exhibit ("Pet. Ex.") 1 at 5.  Petitioner alleges that the polio vaccination caused him to develop polio and post-polio syndrome.  Because petitioner received this vaccination prior to the effective date of the Program, October 1, 1988, petitioner's polio, which he claims he developed immediately after receiving the polio vaccine, is subject to the Program's filing requirements applicable to pre-Program vaccinations, which are laid out in § 16(a)(1).  Likewise, his claim of post-polio syndrome, which he asserts occurred "around 1988," is subject to the same filing requirements because petitioner states that this injury was caused by the same pre-Act vaccination which allegedly caused his polio.  Despite the supposed date of his injury or aggravation thereof, petitioner did not file a claim for compensation until 2015, some 57 years after receiving the allegedly causal vaccine and approximately 27 years after experiencing post-polio syndrome.

### III.    Discussion

In her Motion to Dismiss, respondent states that petitioner failed to file his claim within the statutorily prescribed 28 months after the October 1, 1988 date set forth in § 16(a)(1), and therefore, petitioner's claim is time-barred.  Respondent also argues that § 16(a)(1) further prohibits this claim because petitioner filed his claim more than 36 months after experiencing symptoms of his alleged significant aggravation.  According to respondent, this claim must be dismissed as it "is insufficient to result in a finding of entitlement to compensation, even if all of petitioner's allegations are accepted as true."  Respondent's Motion to Dismiss ("Motion") at 1.  Respondent cites to several cases which have held that § 16(a)(1) is a statute of repose, and therefore not subject to the doctrine of equitable tolling.  *See Goodlock v. Sec'y of Health and Human Servs.*, No. 05-1240V, 2006 WL 5630235 (Fed. Cl. Spec. Mstr. Jan. 9, 2006); *see also Stankovic v. Sec'y of Health and Human Servs.*, No. 15-424V, 2015 WL 5656344 (Fed. Cl. Spec. Mstr. Sept. 2015).

---

[6] Oral polio vaccine (OPV) is an attenuated viral vaccine.  On rare occasions, if a person is seriously under-immunized, an excreted vaccine-virus can continue to circulate for an extended period of time.  In very rare instances, the vaccine-virus can genetically change into a form that can paralyze.  This is referred to as a circulating vaccine-derived poliovirus (cVDPV).  World Health Organization, "What is vaccine-derived polio?" http://www.who.int/features/qa/64/en/, updated October 2015 (last visited Nov. 29, 2016).  Paralytic polio following receipt of OPV is a Table injury.  § 14(a)(III)(a).

[7] Post-polio syndrome is a condition that affects polio survivors years after recovery from an initial acute attack of the polio virus.  Most common symptoms include slowly progressive muscle weakness, fatigue (both generalized and muscular), and a gradual decrease in the size of muscles (muscle atrophy).  Pain from joint degeneration and increasing skeletal deformities may precede the weakness and muscle atrophy.  National Institute of Neurological Disorders and Strokes, "Post-Polio Syndrome Fact Sheet," last modified February 23, 2015, http://www.ninds.nih.gov/disorders/post_polio/detail_post_polio.htm (last visited Nov. 29, 2016).

Petitioner believes that his claim is not time-barred and argues that his status as an inmate justifies tolling the statute of limitations. Petitioner contends that the controlled environment of the prison system frustrates his access to the courts and the information required to organize facts and evidence in order to comply with the requirements of the Program. *See* Response to Motion to Dismiss, ECF No. 25.

§ 16(a)(1) addresses the issue of limitations of actions for petitions involving vaccines which were administered prior to the effective date of the Program, October 1, 1988. The statute states:

In the case of –

> (1) A vaccine set forth in the Vaccine Injury table which is administered before October 1, 1988, if a vaccine-related injury or death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury or death after the expiration of 28 months after October 1, 1988, and no such petition may be filed if the first symptom or manifestation of onset or of the significant aggravation of such injury occurred more than 36 months after the date of administration of the vaccine.

42 U.S.C. § 300aa-16(a)(1). Petitions involving vaccines that were administered after October 1, 1988, are governed by § 16(a)(2). Because petitioner allegedly received the allegedly causal vaccination in the 1950s, his claim is subject to the provisions contained in § 16(a)(1).

A. Time Limits for Petitioner's Causation Claim

In consideration of the parties' arguments, there are three fundamental questions before the court. First, given that petitioner received the allegedly causal vaccination approximately thirty years before the Program's enactment, when would he have had to have filed his claim in order for it to be timely? Second, given that petitioner allegedly began experiencing a subsequent injury that stems from his initial injury, i.e., post-polio syndrome, does this change the determination about whether this is a pre-Act case? Third, does his incarceration excuse a filing well past the deadlines established in the Act?

Because petitioner has not been able to file any medical records, the only timeline of events available is that provided by Mr. Begley himself. Based on his memory, petitioner claims that his initial onset of polio was in or around 1958 and that he subsequently began experiencing symptoms of post-polio syndrome in 1988. He claims that both ailments were a result of the polio vaccination he received sometime in the late 1950s. Response, ECF No. 25.

Relying upon the dates provided by petitioner, I find that the vaccine in question was administered approximately 30 years prior to the Vaccine Program's effective date on October 1, 1988. Therefore, for a pre-Act vaccination to be timely, according to § 16(a)(1), petitioner's claims needed to have been filed within the 28-month deadline following October 1, 1988, or prior to February 1, 1991. Here, petitioner filed his claim on May 27, 2015, more than 24 years after the deadline. His claim is therefore time-barred by § 16(a)(1).

B. Time Limitations for Petitioner's Significant Aggravation Claim

According to petitioner, the first manifestation of onset of his post-polio syndrome occurred in 1988. In addition to the 28-month deadline for the filing of pre-Act cases, § 16(a)(1) also states that "no petition may be filed if the first symptom or manifestation of onset or of the significant aggravation of such injury occurred more than *36 months after the date of administration* of the vaccine" (emphasis added). Some 30 years elapsed between petitioner's receipt of the allegedly causal vaccination and the onset of his post-polio syndrome. That length of time means that petitioner cannot prevail on a significant aggravation claim.

I have made no determination as to the onset of petitioner's post-polio syndrome. Petitioner has provided little detail about the onset of his alleged significant aggravation, just dating it to 1988. Ultimately, whether petitioner experienced an onset of post-polio syndrome in January 1988 (pre-Act) or December 1988 (post-Act) makes no difference in terms of statutory requirements for timeliness, as § 16(a)(1) governs all cases involving vaccines "*administered before* October 1, 1988" (emphasis added).

C. Availability of Equitable Tolling

Petitioner argues that his unique circumstances warrant equitable tolling. He has been in prison for the past 32 years, and he states that he was unaware of the Program and thus unable to file a timely petition.[8] Thus, petitioner argues that his claim should be equitably tolled considering the "unique surrounding circumstances" of his imprisonment. While *Cloer v. Secretary of Health and Human Services* has established that equitable tolling can apply to *post*-Act vaccination claims, the Federal Circuit clarified that tolling is only available to post-Act vaccination claims in which "some extraordinary circumstance stood in [petitioner's] way." 654 F.3d 1322, 1344 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). This equitable relief has been granted only sparingly in federal courts. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Moreover, previous case law has established that § 16(a)(1) is a statute of repose, and therefore, equitable tolling is not applicable for pre-Act claims, regardless of the unique circumstances in question. *See Lampf v. Gilbertson*, 501 U.S. 350 (1991); *Lombardo v. Sec'y of Health and Human Servs.*, 34 Fed.Cl. 21 (1995).

The Vaccine Program was enacted to provide relief to individuals whose injuries or death qualified them or their estate for compensation under the terms of the Program. *Wiley v. United States*, 68 Fed. Cl. 733, 736 (2006). However, the financial appropriation could not possibly be large enough to ensure that all potential retrospective victims whose injuries had occurred prior to the enactment of the Vaccine Program could be compensated. *Id.* Therefore, Congress specified a cutoff date. Any claim based upon a vaccination that occurred before the Program's enactment

---

[8] Petitioner's ability to file his Petition in this matter indicates that he had the ability to exercise his legal rights. His incarceration did not ultimately prevent him from filing this case. His argument, then, is that he did not learn of the Program in time to file a timely Petition. Failure to learn of the Program in order to file a timely Petition has not been found to constitute grounds for tolling the statute of limitations. *Lombardo,* 34 Fed. Cl. at 28 (quoting S. 2117, 98th Cong., 1st Sess. § 2115(b) (1983)).

date (October 1, 1988) had to be filed within 28 months of the enactment date, i.e., before February 1, 1991. With this understanding, the United States Court of Appeals for the Federal Circuit has ruled that § 16(a) is a statute of repose. See *Brice v. Sec'y of Health and Human Servs.*, 240 F.3d 1367, 1371 (Fed. Cir. 2001).[9]

A statute of repose is distinguishable from a statute of limitations in that a statute of repose runs from a determined date unrelated to the injury and does not consider the date of injury as a factor when determining the deadline for filed claims. *Wiley*, 69 Fed. Cl. at 736; *Lombardo*, 34 Fed. Cl. 21, 26; see also *Lampf*, 501 U.S. at 363. As opposed to a statute of limitations, for which the main purpose is "the prevention of stale claims, a statute of repose is designed to provide immunity to the defendant and 'relieve potential defendants from anxiety over liability for acts committed long ago.'" *Wiley*, 69 Fed. Cl. at 373 (quoting *Massard v. Sec'y of Health and Human Servs.*, 25 Cl.Ct. at 421, 425 (1992)).

In *Wiley*, the court looked to *Lombardo v. Secretary of Health and Human Services'* analysis of the various factors used to conclude that § 16(a)(1) of the Vaccine Act was a statute of repose. 69 Fed.Cl. at 737. Both courts stated that the most significant factor was the plain language of § 16(a)(1), which provides valuable insight into the deadline's classification and "suggests that Congress sought to extend relief to those vaccinated before the Act went into effect, but also wanted to provide the government with a definite date after which it would no longer have to defend against any such retroactive suits." *Id.* (quoting *Lombardo*, 34 Fed. Cl. at 27). Specifically, the statute states that "no petition may be filed" after the deadline. Additionally, there is no provision in the Vaccine Act that suggests tolling of the statutory filing deadlines. Although the Supreme Court has held that the binding character of the language is only marginally probative of congressional intent, this unambiguous language leans toward a finding that § 16(a)(1) is a statute of repose.

The time period provided in § 16(a)(1) did not run with accrual of a specific claim, but rather began to run with the effective date of the Program. Both courts found that this independent start date of the statutory time limit in § 16(a)(1) further establishes that Congress intended this deadline to serve as a statute of repose. *Wiley*, 69 Fed. Cl. at 737; *Lombardo*, 34 Fed. Cl at 27.

Congress was keenly aware that some meritorious claims might not be filed before the deadline established in the Act. Congress initially provided a filing period of 24 months for outstanding claims in § 16(a)(1). After it became clear that the Secretary of Health and Human Services was not advertising the Program as Congress had anticipated, this period was later extended to 28 months. 136 Cong. Rec. S15, 198-99 (daily ed., Oct. 12, 1990) (remarks of Sen.

---

[9] In *Cloer*, the Court of Appeals for the Federal Circuit overruled *Brice* insofar as the *Brice* court "precluded application of the doctrine of equitable tolling in Vaccine Act cases." *Cloer v. Sec'y of Health Human Servs.*, 654 F.3d 1322, 1325 (Fed. Cir. 2011). As *Cloer* dealt with a post-Act case, *Brice*'s discussion of pre-Act cases remains valid. Given *Brice, Cloer,* and their progeny, equitable tolling is available post-Act cases only in very rare circumstances; it is not available at all for cases involving pre-Act vaccinations.

Kennedy). Congress feared that individuals who had only just heard of or had not yet heard of the Program would not have sufficient time to collect the necessary materials to file a petition for compensation. *Id.* To address this issue, Congress added four months to the deadline date (February 1, 1991) in order to file a claim in pre-Act cases. Congress was thus aware of the problem identified by petitioner in the instant case and chose to address it. Unfortunately for petitioner, their amendment to the deadline was not generous enough to encompass his claim, filed approximately 26 years too late.

Finally, the legislative history of § 16(a)(1) reinforces the conclusion that Congress intended the provision to be a statute of repose. When introduced in the Senate, the Vaccine Act contained a statute of limitations provision which allowed a petition to be filed after the statutory deadline "if the petitioner demonstrates that he or she was not informed [of the vaccine compensation program], or did not know that the injury was compensable." *Lombardo,* 34 Fed. Cl. at 28 (quoting S. 2117, 98th Cong., 1st Sess. § 2115(b) (1983)). However, when the Vaccine Act was finally enacted by Congress, it did not contain this provision, nor did it permit the filing of petitions after the deadline. § 16(a)(1). Congress was aware of how "to expressly provide for the filing of untimely petitions for compensation when a petitioner was unaware that his injury was compensable, but chose not to do so in the eventual enactment." *Id.* This history indicates that Congress had no intention of allowing petitions based on pre-Act vaccinations to be filed after the February 1, 1991 deadline and, therefore, did not want § 16(a)(1) to be equitably tolled. All of these factors demonstrate clear congressional intent to make § 16(a)(1) a statute of repose. *Wiley,* 69 Fed.Cl. at 737; *Lombardo,* 34 Fed.Cl. at 27; see also *Brice.*, 240 F.3d at 1371. Because the statutory time deadline in question is a statute of repose, petitioner's claim is not subject to equitable tolling.

Even if § 16(a)(1) did not entirely preclude the possibility of equitable tolling in pre-Act cases, petitioner would still be unable to avail himself of that remedy to excuse his untimely filing. While *Cloer* does allow equitable tolling in *post-*Act cases, the remedy is only available in "extraordinary circumstances." *Cloer,* 654 F.3d at 1344-1345. Judges and special masters have applied *Cloer* strictly, only rarely finding that a petitioner's circumstances are unique enough to warrant equitable tolling. *See Mojica v. Sec'y of Health and Human Servs.,* 102 Fed. Cl. 96, 101 (2011). Recently, this issue was addressed in the context of mental incapacity. The petitioner in *Hodge* had a lengthy history of mental illness and was noted by several treaters to have been impaired. Petitioner's mental incapacity was found to have been an extraordinary circumstance that ultimately excused his untimely filing. *Hodge v. Sec'y of Health and Human Servs.,* No. 09-453V, 2015 WL 9685916 (Fed. Cl. Dec. 21, 2015). However, *Hodge* should not be interpreted to allow indefinite tolling of the statute of limitations. After discussing *Hodge* and other cases dealing with mental capacity, another special master ruled that in order for mental incapacity to warrant equitable tolling, the petition's untimeliness must be the "direct result" of that incapacity. *Gray v. Sec'y of Health and Human Servs.*, No. 15-146V, 2016 WL 787166, at *6 (Fed. Cl. Feb. 4, 2016).

In the instant case, petitioner argues that his circumstances are unique in that his imprisonment prevented the timely filing of his petition. This issue has already been addressed. In *Wiley,* 69 Fed. Cl. 733 (2006), the petitioner, a prison inmate, filed his pre-Program vaccination

claim fourteen years after the statutory deadline. *Id.* at 735.   Though harsh, the court found that the petitioner's ability to timely file his claim was not affected by the circumstances of his incarceration, and even if it were, these circumstances were not so extreme as to justify equitable tolling. *Id.* at 737.   The court concluded that "even if [petitioner] had shown due diligence, the Special Master's conclusion is correct that § 16(a)(1) is a statute of repose, making equitable tolling inapplicable." *Id.* Mr. Begley's claim closely parallels the *Wiley* case.   Here, as in *Wiley,* petitioner received a vaccine subject to the pre-Act requirements of § 16(a)(1).   Here, as in *Wiley*, petitioner did not file his claim until years after the statutory deadline had expired.   And here, as in *Wiley*, petitioner's unique circumstance of being incarcerated does not warrant applying equitable tolling to his claim.

### IV.   Conclusion

Succinctly stated, petitioner's claim is time-barred because he filed approximately 24 years after the statutory deadline for filing retrospective claims pursuant to the Vaccine Act.   § 16(a)(1) is a statute of repose and not a statute of limitations and is not subject to equitable tolling. Therefore, the court has no choice but to grant respondent's motion to dismiss the claim as untimely filed.

Respondent's motion to dismiss is hereby GRANTED.   The petition is therefore dismissed. The clerk shall enter judgment accordingly.

IT IS SO ORDERED.

s/

Mindy Michaels Roth
Special Master